UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 20-CR-10098-WGY |
| | ) | |
| | ) | |
| STEPHANIE STOCKWELL, | ) | **FILED UNDER SEAL** |
| | ) | |
| Defendant | ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On October 29, 2020, defendant Stephanie Stockwell pleaded guilty to each count in an Information charging her with conspiracy to commit cyberstalking, contrary to 18 U.S.C. § 2271A(2) and in violation of 18 U.S.C. § 371 (Count 1), and witness tampering conspiracy, contrary to 18 U.S.C. § 1512(b)(3) and in violation of 18 U.S.C. § 371 (Count 2). The Probation Office's Presentence Investigation Report assigns Stockwell to a total offense level of 19 and a Criminal History Category of I.[1] The corresponding guidelines sentencing range ("GSR") is 30 to 37 months. The United States agreed in a plea agreement with Stockwell to recommend not more than 24 months' imprisonment. (Docket No. 43).

[REDACTED] after evaluating the factors set forth at 18 U.S.C. § 3553(a), the government requests that the Court sentence Stockwell to 2 years' probation, with

[1] Citations to Stockwell's Presentence Investigation Report (or PSR) appear below as "¶ __."

the first twelve months of her probationary term to be served in home confinement, and a $200 special assessment.

**I. The Offense**

In August 2019, Stockwell was 25 years old and the manager of eBay's Global Intelligence Center ("GIC"), an intelligence and analytics group that supported eBay's security operations. (¶¶ 7c, d). In her first professional experience, Stockwell had worked at eBay for approximately 20 months and was earning $120,000 per year in salary. She reported to Jim Baugh, eBay's Senior Director of Safety & Security, who (at age 44) was approximately 16 years older than her. (¶¶ 7a, d).

Victims 1 and 2—wife and husband—lived in Natick. They were the reporter and publisher, respectively, of an online newsletter ("the Newsletter") that covered ecommerce companies, including eBay. (¶¶ 8-9). Members of eBay's Executive Leadership Team, including the company's CEO and its Chief Communications Officer ("CCO"), were frustrated with both the Newsletter's reporting and with "Fidomaster", an online persona who was critical of eBay and the CEO in particular. (¶¶ 26, 31).

By June 2019, Baugh was frustrated enough with the Victims to place a late-night "hang-up" phone call to them (¶ 23), and to dispatch to Natick a member of his security team, a former Santa Clara Police Department captain named Brian Gilbert. Late at night on June 8, 2019, Gilbert scrawled "Fidomaster" in permanent marker on the Victims' fence. (¶ 22). In June and July 2019, Baugh tasked Stockwell and others in the GIC with monitoring the Newsletter's posts in real time, 24 hours per day, and forwarding them to Baugh. (¶ 24). In late July 2019, believing that Fidomaster or the Victims would be traveling to Las Vegas for an eBay seller

conference, Baugh sent Zea and Gilbert to the airport to film all of the arriving passengers deplaning from a particular flight. (¶ 25).

*The Harassment and Intimidation Campaign*

In August 2019, after Victim 1 reported in the Newsletter on a lawsuit between eBay and Amazon, the CEO sent the CCO a text message suggesting that it was time to "take [Victim 1] down". The CCO immediately sent Baugh the same text message, and another labeling Victim 1 a "biased troll who needs to get BURNED DOWN". (¶ 26). In response, Baugh weaponized eBay's security department, targeting Victims 1 and 2 with a three-part harassment and intimidation campaign. (¶¶ 27-83). As indicated below, Stockwell had a role in some parts of the campaign (but not all of it).

On August 7, 2019, at Baugh's direction (and without Stockwell's knowledge or involvement), Victim 1 began to get anonymous, harassing messages on her Twitter account. (¶ 32). The messages, which featured a skeleton mask intended to scare Victim 1, criticized the Newsletter's coverage of eBay ("What's your problem with eBay? You know that's how we pay rent."); were frequently vulgar ("Stop hiding behind ur computer screen u fucking cunt"); and at times threatened violence ("wen u hurt our bizness u hurt our familiys…Ppl will do ANYTHING 2 protect family!!!!"). (¶¶ 30, 32, 35, 50).

At the same time, again at Baugh's direction but with Stockwell's and others' involvement, the Victims also began to receive anonymous deliveries at their home. Some were gross, such as fly larvae, cockroaches, and spiders. (¶¶ 36, 49). Others were embarrassing, including pornography addressed to Victim 2 at his neighbors' homes. (¶ 37). The most concerning of them were threatening—a funeral wreath and a book entitled Surviving the Loss of a Spouse. (¶¶ 45, 48).

Baugh directed these deliveries by WhatsApp, an encrypted messaging application. For example, on August 12, 2019, he messaged Stockwell, co-defendants Stephanie Popp and Veronica Zea, and others:

> Starting now through Tuesday night double our effort on everything. Spam, house deliveries, etc. I don't want anything delivered on Thursday, so the cutoff should be Wednesday night – wake them up with a limo driver or something and then everything goes cold Thursday morning. … Take down all Craigslist posts late Wednesday night. Stop Spam late Wednesday night. etc.

(¶ 44).

The Twitter messages escalated to include the publication of the Victims' home address on the internet, online advertisements for consensual sexual encounters there, and statements that the harasser was going to "pay [Victim 1] a visit". (¶¶ 71, 75). The messages also made clear that their antagonist was responsible for the harassing deliveries. (¶ 70) ("U get my gifts cunt!!??").

Victim 1's email inbox also began to overflow with dozens of bizarre emails from, among other groups: an Irritable Bowel Syndrome patient support group; Scientology Today; The Satanic Table; the Communist Party of the United States, a sex and relationship coaching website, the Submissive Guide, and Adam & Eve, an adult products website. Victim 2 later received a phone call from Adam & Eve responding to his purported interest in a sex toys franchise—an interest he had never expressed. (¶ 34).

Baugh planned the threatening messages and deliveries in meetings with eBay employees and contractors who reported to him. (¶¶ 27-28). He directed them to use prepaid debit cards, disguises, overseas email accounts, WhatsApp (instead of eBay's email network), non-eBay computers, and Virtual Private Networks—all to assure that the campaign could not be traced back to him, to his coconspirators, or to eBay. (¶¶ 13, 29, 33, 36). He directed Stockwell, for

example, to purchase a laptop computer at a San Jose area Best Buy, which Baugh, Popp, Gilbert, and Cooke later used to send the harassing messages. (¶ 29).

On August 11, 2019, Baugh recruited Dave Harville—eBay's Director of Global Resiliency—to travel with him (and co-defendant Zea) to Boston on a surveillance "op" targeting Victim 1 and the Newsletter. Baugh made the illegal purpose of the trip clear, telling Harville that Baugh had been ordered to "find and destroy", and to "neutralize" Victim 1's website. Harville acknowledged: "Copy. Totally black[.] I'm deleting this now." (¶¶ 42-43). Baugh, Harville and Zea needed an alibi for the trip—a software development conference taking place in Boston. They also took with them an eBay document (prepared by Stockwell at Baugh's direction) that falsely identified the Victims as a security threat—"in case we got stopped..that way would at least have something to show to PD". (¶¶ 52, 59, 80).

On August 15, 2019, Baugh, Harville, and Zea traveled to Boston. (¶ 55). Before doing so, Harville obtained the Victims' license plate number from Stockwell (¶ 56) and downloaded an app to his phone that could be used to monitor the "Natick Police and Fire Live Audio Feed". (¶ 54). Upon arriving, Baugh, Harville, and Zea went right to the Victims' home: once late at night on August 15 in a failed attempt to install a GPS device on the Victims' car—it was locked in the garage—and again on August 16 to surveil the Victims and to follow Victim 2 as he drove in Natick. (¶¶ 57, 61, 63). After failing to install the GPS device, Harville purchased equipment at a local hardware store to break into the Victims' garage. (¶ 60).

Despite the surveillance team's precautions, Victim 2 was able to take a picture of their license plate, leading Baugh to return the "burned" rental van. (¶¶ 72, 78). Baugh, Harville, and Zea returned to their hotel's bar, where Baugh and Harville joked about what else could be delivered to the Victims, including a bag of human feces, a running chainsaw, and a rat. Baugh

also called Stockwell (who was back in California) and directed her to resume the harassing deliveries, even though Baugh already knew the Victims were terrified. (¶¶ 65-66). In response, Stockwell researched Boston-area 24-hour drain repair services. (¶ 66).

Baugh appreciated the impact his campaign had on the Victims. On August 20, after hearing a police dispatch regarding the failed surveillance, Baugh quipped to Stockwell and another GIC analyst "now they are seeing ghosts, think everyone is following them and they call the police every 10 minutes". The next day, referring to a plan to harass "an idiot prosecutor in my hometown who brought a bullshit case against my Dad," Baugh added, "If I gave him an ounce of what we've been giving the [Victims], it would be devastating to him." (¶ 83).

*The Obstruction*

By August 21, 2019, with the Victims' help, the Natick Police Department ("NPD") had connected Zea and Harville to the surveillance. An NPD detective went to the lobby of Boston's Ritz Carlton Hotel to interview Zea. Baugh spoke to the detective by phone, falsely claimed to be Zea's husband, and (in Baugh's words) "played dumb". (¶ 84). In response, the detective reached out to eBay for help investigating the harassment of the Victims.

Baugh attempted to dispatch to GIC employees, Analyst 1 and Analyst 2, to support his efforts to continue the harassment campaign and to obstruct the police investigation. Analyst 1 quit; Baugh fired Analyst 2 when she refused to go. (¶ 73).

Baugh then sent defendant Gilbert (the retired Santa Clara police captain) from California to Natick to meet with the NPD, and to report (falsely) that eBay was investigating the harassment of the Victims, not participating in it. (¶ 112). To support this ruse, Baugh directed defendant Popp to post more Twitter messages threatening the Victims. (¶ 91).

After learning that the NPD was investigating the use of a prepaid debit card at a Safeway supermarket in the Bay Area to purchase one of the harassing deliveries to the Victims, Baugh directed Stockwell to "pin the safeway card" on someone else by preparing a document featuring eBay "Persons of Interest" in the Bay Area, which could be used to deflect attention from Zea, the co-defendant who used that debit card. (¶¶ 98-99). Stockwell created the document, "Bay Area POIs_August 2019.docx," and emailed it to Baugh, who passed it along to Gilbert to provide to the NPD. (¶ 101). Zea, of course, was not listed.

Baugh, Gilbert, Popp, and Cooke were also aware that eBay was attempting to gather information in response to the NPD's request for assistance. (¶ 104). Armed with this knowledge, on August 26, 2019, Baugh directed Harville, Popp, Gilbert, and Zea to keep their phones "clean" (*i.e.*, to delete evidence concerning the harassment of the Victims and the surveillance operation in Natick, including WhatsApp messages). (¶ 121). Baugh also dispatched Popp to sit in on telephone interviews of Stockwell and Zea (without disclosing that Popp was in the room listening to the questions), so that Popp could give visual cues as to how Stockwell and Zea might best answer the questions. (¶ 120). Baugh, Harville, and Zea also sent to eBay's lawyers an altered email related to the software development conference—the alibi conference—so that their purported registration fit better the timeline of their travel. (¶ 119).

Baugh falsely denied to eBay investigators that eBay personnel had any role in the harassment of the Victims. (¶ 116). Harville, for his part, falsely denied having been to Natick, or having had any interactions with the Victims or the NPD. (¶¶ 114, 118).

On August 30, 2019, aware of both the NPD's investigation and an eBay order not to delete anything from his company phone, Harville asked Baugh if he should "wipe" the device, and then returned it to eBay with the evidence related to his trip to Natick deleted. (¶¶ 127-28).

In September 2019, aware of both the police and eBay investigations, Popp made more posts to social media accounts that had been used to harass the Victims, to suggest that those responsible for harassing the Victims were still at large. (¶ 129).

Baugh's obstruction continued past October 2019, when the government sent him, Stockwell, and several other co-conspirators target letters. Baugh manipulated Stockwell, by beginning to have sex with her in the wake of the harassment campaign, and by paying her $5,000 in cash just before her proffer with federal investigators—a purported gift that she should not deposit all at once because it might cause trouble with the government. Baugh also "prepared" Stockwell for the meeting by suggesting she only discuss what she had seen personally (which was nothing in Boston or Natick). He also instructed Stockwell to lie about the nature of her relationship with Baugh because it would not reflect well on her (which she then did). Baugh ended the relationship almost immediately after the proffer. (¶¶ 130-137).

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[REDACTED]

[REDACTED]

[REDACTED]

**III. The Requested Sentence**

In the government's view, Stockwell's role in a serious offense [REDACTED] might under other circumstances still counsel a custodial term. The terror the Victims experienced as a result of the defendants' harassment and intimidation campaign—even just the parts in which Stockwell participated most directly—is plain from the Victims' Impact Statements. (PSR ¶¶ 46-54). The government's [REDACTED] recommendation of 24 months (reflected in the plea agreement) correctly captures the nature and circumstances of the offense. Stockwell and her coconspirators targeted the Victims from behind keyboards with conduct that was unimaginably cruel. That they did so because of what the Victims wrote in an online newsletter about ecommerce is abhorrent to First Amendment values. That several well-paid employees of a Fortune 500 company's security department concluded that their conduct was somehow in bounds counsels a sentence that would deter others from engaging in online and real-world harassment in service of a corporate objective.

Ultimately, for three reasons, the government recommends for Stockwell a non-custodial sentence of two year' probation, with the first twelve months of that term to be served in home confinement (and the required $200 special assessment), along with mental health testing and treatment at the direction of the Probation Office.

First, as noted above, Stockwell (along with Zea) was among the least culpable participants in the charged conspiracies. Stockwell was involved in planning and sending both harassing and intimidating packages. (¶¶ 28, 48). She had no visibility into the threatening Twitter messages that Baugh, Popp, Cooke, and Gilbert were sending to Victims 1 and 2 at the same time. Although it does not excuse her conduct, Stockwell did what others directed. Baugh instructed the "how" of the harassment. (¶ 12 ("Starting now through Tuesday night double our effort on everything. Spam, house deliveries … a limo driver or something … Take down all Craigslist posts late Wednesday night, etc."). At Baugh's direction, Stockwell prepared a "Person of Interest" document that falsely accused the Victims of threatening eBay, (¶ 59 ("make it up"), and another "Person of Interest" document that could be used to "pin" the harassing deliveries on someone else. (¶ 97). There were other defendants who showed initiative beyond Baugh's directions, including Gilbert's drafting of threatening Twitter messages (¶ 75) and Popp's continuing to post messages to leave the impression that the Victims' harassers were still at large (¶ 129).

Second, there was a gross disparity in power between Baugh—the organizer and leader of the conspiracy—and Stockwell. Stockwell had no professional experience prior to joining Jim Baugh's department at eBay—experience that might have made an instruction to monitor the Victims' Newsletter day and night seem unusual. She had no government experience (Baugh); had not served for 20 years as a police officer (Cooke and Gilbert); had no military police

experience (Harville); and had not even worked in security at another large company (Popp). This disparity is most easily seen in Baugh's use of sex, money, and persuasion to influence Stockwell's response to a target letter in a federal investigation. The Court should take into account what happened to Stockwell in September, October, and November 2019 as it evaluates an appropriate sentence.

Finally, as revealed by documents that Stockwell has provided to the government and to the Probation Office, Stockwell has significant mental health concerns (and likely had them during her commission of her offenses). These include, according to her treating physician, anxiety disorder (unspecified); ADHD (inattentive presentation); and autism spectrum disorder. The diagnosis of autism spectrum disorder is consistent with the government's interactions with Stockwell during her initial proffer (in which a flat affect distinguished her from other interviewees and left the government with the sense that she was not willing to cooperate). This is not to say that a diagnosis of autism spectrum disorder excuses Stockwell's or any defendant's illegal conduct—a felony conviction appropriately follows what Stockwell knowingly did in this case. But the government does credit that Stockwell was more susceptible to the aura of legitimacy that Baugh was projecting. The government also notes that Stockwell has, since this offense, taken an unusually active role in her own mental health, both in seeking the regular care of a therapist and in completing more than 230 hours' work in a suicide prevention program, where she expects to train to provide training to others.

**IV. Conclusion**

For all of these reasons, the United States respectfully requests that the Court impose a sentence of two years' probation, a special assessment of $200, and require that Stockwell serve the first twelve months of her probationary term on home confinement.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

by:/s/Seth B. Kosto
SETH B. KOSTO
Assistant U.S. Attorney
One Courthouse Way
Boston, Massachusetts 02210

October 7, 2022
Boston, Massachusetts

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this sealed motion for downward departure was sent by electronic mail message to counsel for the defendant on October 7, 2022.

/s/Seth B. Kosto
SETH B. KOSTO
Assistant U.S. Attorney

Boston, Massachusetts
October 7, 2022