1                 UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS (Boston)

3                              No. 1:20-cr-10098-WGY-3

4

5     UNITED STATES OF AMERICA

6

7     vs.

8

9     STEPHANIE STOCKWELL

10

11                          * * * * * * * * *

12

13                       For Hearing Before:
                         Judge William G. Young

14

15                          Sentencing

16

17                   United States District Court
                     District of Massachusetts (Boston.)
                     One Courthouse Way
18                   Boston, Massachusetts 02210
                     Tuesday, October 11, 2022

19

20                          * * * * * * * *

21

22            REPORTER: RICHARD H. ROMANOW, RPR
                     Official Court Reporter
23               United States District Court
          One Courthouse Way, Room 5510, Boston, MA 02210
24                   bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3   SETH B. KOSTO, ESQ.
        United States Attorney's Office
 4      One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
 5      (617) 748-3230
        E-mail: Seth.kosto@usdoj.gov
 6      For the United States of America

 7

 8   GAIL SHIFMAN, ESQ.
        Law Office of Gail Shifman
 9      2431 Fillmore Street
        San Francisco, California 94115
10      (415) 551-1500
        Email: Gail@shifmangroup.com
11      for the defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2            (Begins, 10:30 a.m.)
 3            THE CLERK:  Now hearing Criminal Matter 20-10098,
 4       the United States of America versus Stephanie Stockwell.
 5            THE COURT:  Now good morning.  This is a
 6       sentencing under 18 United States Code Section 3553(a),
 7       and would counsel please identify themselves.  We'll
 8       start with the government.
 9            MR. KOSTO:  Good morning, your Honor, Assistant
10       United States Attorney Seth Kosto appearing on behalf of
11       the government.
12            MS. SHIFMAN:  Good morning, your Honor, Gail
13       Shifman on behalf of defendant, Stephanie Stockwell, who
14       is present to my right.
15            THE COURT:  And good morning, Ms. Shifman.  May I
16       address her about having read the presentence report?
17            MS. SHIFMAN:  Yes, your Honor.
18            THE COURT:  Ma'am, have you read the presentence
19       report that has been prepared in your case?
20            THE DEFENDANT:  I have, your Honor.
21            THE COURT:  And have you talked it all over with
22       your counsel?
23            THE DEFENDANT:  I have, your Honor.
24            THE COURT:  And do you think you understand it?
25            THE DEFENDANT:  I do, your Honor.
```

```
 1          THE COURT:  Nothing's been withheld from the
 2     presentence report under the rules of criminal
 3     procedure?
 4          PROBATION OFFICER:  That's correct, your Honor.
 5          THE COURT:  Very well.
 6          Sentencing in this session of the court proceeds
 7     in four steps.  The first three steps are largely
 8     arithmetic.  Excuse me.  And first I calculate the
 9     highest sentence that would be open to the court under
10     the Constitution.  Then I consult the average sentences
11     imposed for offenses of this sort.  Third, I accurately
12     calculate the sentencing guidelines as required by the
13     law.  If anyone would differ from any of the arithmetic
14     that I go through, I ask you to interrupt me and I will,
15     um, seek to address it at that time.
16          I understand that there are victims who wish to
17     speak?
18          MR. KOSTO:  There are, your Honor, David and Ina
19     Steiner are both in the courtroom this morning and would
20     like to speak.
21          THE COURT:  And that is their right and the Court
22     would be happy to entertain that.  And the order, we'll
23     do the arithmetic, the victims will speak, and then
24     we'll turn to counsel.  I'll hear from the government,
25     I'll hear from the defense, I'll hear from Ms. Stockwell
```

1    if she wishes to be heard from.

2         MS. SHIFMAN:  Thank you, your Honor.

3         MR. KOSTO:  Thank you, your Honor.

4         THE COURT:  That's how we'll proceed.

5         This Court considers that the highest sentence in

6    our quasi-determinate sentencing system which it might

7    impose is the top of the applicable guideline range

8    without regard to any, um, mitigating factor, subject of

9    course to the statutory maximum.

10        In this case, without the discount for the --

11   without the discount for the guilty plea, that would

12   take the level to a level -- excuse me.  I misspoke.

13   Yes, that would take it to a Level 22, the top of the

14   applicable guideline at this criminal history is 51

15   months, that is within the statutory range and that is

16   the highest sentence the Court could impose.

17        MS. SHIFMAN:  Your Honor, if I may?

18        THE COURT:  You may.

19        MS. SHIFMAN:  Thank you.  We filed an objection to

20   the two-level increase for a pattern of activity, um, as

21   applicable to each victim group.  I don't want to really

22   spend too much time on it, your Honor, it's contained

23   within our memorandum.

24        THE COURT:  I've read your memorandum and this is

25   absolutely the time to raise it because it really will

1  affect the calculation which I must make and that drives

2  the highest possibility.  Now while the highest

3  possibility is somewhat academic, I'll hear you.

4       MS. SHIFMAN:  Thank you, your Honor.

5       Your Honor, we don't believe that the pattern of

6  activity enhancement is applicable to Ms. Stockwell for

7  the following reasons.  Her course of conduct in this

8  offense is exactly what the two-level increase for

9  pattern is attempting to enhance the guidelines, we

10  believe it's double-counting.  And based on

11  Ms. Stockwell's role in the offense and what was

12  reasonably foreseeable to her and to her actual

13  activities in this offense, we do not believe that there

14  is the extended pattern of activity that the First

15  Circuit itself would define as making this guideline

16  applicable.

17       Ms. Stockwell, um, has fully accepted

18  responsibility for her conduct in this offense and what

19  she did was, um, participate on occasion at the

20  direction of her immediate supervisor, Jim Baugh, in the

21  sending of harassing deliveries to the victims here.

22  That occurred at his direction and generally and usually

23  at his selection of what to send on a couple of

24  occasions over the course of, for her activity, about

25  one week.  And at the time of the offense, Ms. Stockwell

1    herself was not aware of the activities of others in the

2    case, though she did, and I don't want to misrepresent

3    this, she did understand that harassing deliveries were

4    being sent to the victims here.

5         With regard to the obstruction, Count 2, she has

6    admitted her role in that offense, and pled guilty to

7    it, and her obstructive conduct is not a separate, um,

8    course of conduct within the harassing cyberstalking

9    statute that we believe is applicable for this

10   enhancement.  With that I will submit it, your Honor,

11   along with what we contained in our memo.

12        THE COURT:  Thank you.  I should have said that I

13   have read all of the materials that have been submitted.

14        Mr. Kosto, what do you say?

15        MR. KOSTO:  Firstly, your Honor, with both the

16   government and Ms. Stockwell, um, submitting

17   recommendations that, for reasons you'll hear and have

18   read about, are substantially below the otherwise

19   applicable guidelines in this case, we don't think it's

20   one that the Court needs to reach, whereas in other

21   cases in this group there will be full briefing and a

22   record on this.  But since the Court has an obligation

23   to calculate the guidelines correctly in every case,

24   looking at the pattern of activity enhancement under

25   2(a)(6.2)(B)(i)(e), it applies when the offense involves

a pattern of harassment, stalking, and threatening, and
the definition in the application notes of a pattern of
activity is given as an example, an instance of
harassment accompanying by an instance of stalking,
essentially accompanied by an instance of threatening,
which is exactly what the conduct entailed here, there
were packages, there was surveillance, and there were
threatening messages.  Ms. Stockwell need not be the
participant in each of those things or the offense to
involve that pattern.  She did participate in the
brainstorming and sending of the harassing packages and
was aware that surveillance was ongoing as she prepared
paperwork that would support the surveillance team in
case they were pulled over by the police.

So under those circumstances the application note
gives the sense that probation got it correctly here.
And I think just as a practical sense, an offense that
involves three different kinds of harassment, stalking,
and threatening, is a more serious one and certainly
more serious, as the Court will hear.  As the victims
experienced it, each of those kinds of harassment,
stalking, and threatening amplified the other.  And so
when the packages are arriving and then a threatening
message comes and says, somewhat vulgarly, "Did you get
my gifts?"  It enhances the fear that the victims

1    experience.  So under those circumstances it makes sense

2    to punish a multipronged campaign more seriously that

3    one that involves one kind of harassment.

4         THE COURT:  The Court so rules, the objection is

5    overruled, and the enhancement is part of the

6    calculation here.

7         I said that I look at the publicly-available

8    databases.  This is the first time that this Court has,

9    um, sentenced for the, um, conspiracy to commit

10   cyberstalking, but the United States Sentencing

11   Commission has a very helpful computer program that

12   gives me the average sentences nationwide for those

13   offenders in Criminal History Category 1 who have

14   committed that crime, and the average -- there are 42

15   such offenders and the average length of imprisonment

16   has been 30 months.

17        Now the Court turns to calculating the sentencing

18   guidelines, as it must, and as the law requires.

19        The base offense level here is 18.  The Court does

20   enhance by 2 levels considering the totality of the

21   circumstances.  The Court however goes down two levels

22   because Ms. Stockwell was a minor participant.  The

23   Court adds in two levels again for obstruction of

24   justice.  To give an adjusted offense level of 20.

25        Count 2 works out exactly the same way.  So each

1  count has an adjusted offense level of 20, which results

2  in increasing the total combined offense level to 22.

3      The Court then goes down three levels to 19

4  because of the guilty plea.

5      So that gives us a range of -- under the

6  guidelines of 30 to 37 months, a period of supervised

7  release of not less than 1 nor more than 3 years, a fine

8  of not less than $10,000 or more than $100,000, and

9  there must be a $200 special assessment.

10     THE COURT:  Are the guideline properly calculated

11 in the eyes the government?

12     MR. KOSTO:  Yes, they are, your Honor.

13     THE COURT:  And, Ms. Shifman, I understand you

14 take issue with it in the manner that we've discussed.

15 I've overruled that and saved your rights.

16     Is there anything else that I should consider in

17 making the guideline calculation?

18     MS. SHIFMAN:  No, your Honor.

19     THE COURT:  Very well.  All right, those are the

20 guideline calculations.

21     And I am certainly open to hearing from the

22 victims.

23     MR. KOSTO:  Thank you, your Honor.  It looks like

24 Ms. Steiner will speak first.

25     THE COURT:  Yes.

1          MR. KOSTO:  Thank you.

2          (Pause.)

3          THE COURT:  You don't have to stand, this business

4    of standing is a convention in the court, but I've been

5    in courts where they don't, and you are welcome.

6          MR. STEINER:  Much appreciated.

7          THE COURT:  Neither one of you need stand, though

8    you are welcome to stand.

9          He suggested that Ms. Steiner would speak first,

10   but I don't care if you want to --

11         MR. STEINER:  No, sir, I'd like to speak first.

12         THE COURT:  You may.

13         MR. STEINER:  Thank you.  My name is David

14   Steiner, I'm Victim Number 2.

15         I admit that of all the victim impact statements

16   that I've written to date, this has been one of the most

17   difficult.

18         I understand youthful ignorance, I realize it is

19   not fair to judge a person by their worst day.  That

20   said, Defendant Stockwell had a lot of bad days in 2019.

21   Not only did she fully conspire to threaten and harass

22   Ina and myself, but she also helped prepare a fake

23   dossier which painted us as "persons of interest" to

24   present to police in the event they were caught

25   surveilling us.  She prepared a list of innocent people

to pin the teams' crimes on.  Her bad decisions
continued even after her fellow defendants were caught.
She accepted $5,000 from Jim Baugh to mislead
investigators.  Her actions were egregious,
incomprehensible, and dangerous.  Should she have known
better?  Absolutely.  To willingly go along with this
obviously harmful and illegal group think shows an
absence of any type of moral compass.

There was a victim on the other side of the
threatening texts and disturbing deliveries that you
sent, one of the most compassionate, caring people you
could ever hope to encounter.  34 years ago she agreed
to become my wife and has made me the most fortunate
person I know.  This is who you attacked.

Not only did you threaten and intimidate a
dedicated journalist whose sole mission was to help
online sellers, the customers of the very corporation
you've worked for.  You've wounded and unalterably
changed the most precious person in my life.

At one time I could make Ina laugh until she could
barely catch her breath, I loved to entertain her so
that I could hear that infectious laugh.  I haven't
heard it in more than 3 years and I miss it.  This is
something you have stolen from me.

You made some very bad choices in your life so

1   far.  You may have been groomed to believe that these

2   choices were acceptable, but every day that we deal with

3   the fallout from your choices was another day that's

4   been stolen.  You may not appreciate it yet but time

5   becomes more valuable with age.  I don't want to spend

6   the rest of my life on this planet hating you or even

7   thinking about you, I want to spend it surrounded by the

8   people I love without the specter of your despicable

9   crimes hanging over me.

10        I'm not at a place yet where I can forgive.  I

11   hope to be someday, not for your sake, but for others

12   and mine.  Maybe that's when I'll know when I've fully-

13   healed.  But that's a long way off.

14        This is a time for accountability as the Court

15   sees fit.  I sincerely hope that whatever sentence the

16   Court imposes, that in the not-to-distant future Ina and

17   I can look back and feel that we got a bit more closure

18   and you can look back and see that it was fair.  To

19   accept responsibility for your actions and come out a

20   better person is all on you.

21        I want to thank the Court for listening and

22   considering my words.

23        THE COURT:  Thank you, sir.

24        Ms. Steiner.

25        MS. STEINER:  Thank you, your Honor.  Can you hear

1    me?

2            THE COURT:  I can.

3            MS. STEINER:  My name is Ina Steiner, I am Victim

4    1.

5            Every day I deal with the fallout from what

6    happened to me in 2019 and today is one more challenge.

7    Like everything about this situation I have more

8    questions than answers including about the people who

9    participated in the campaign.

10           According to the government affidavit, defendant

11   Stockwell created false dossiers painting David and

12   myself as threats to eBay executives.  She sent

13   disturbing and threatening deliveries to our home and

14   was aware of the terror she was inflicting.

15           On August 20th, 2019, co-defendant Jim Baugh sent

16   defendant Stockwell a recording of one of our frantic

17   911 calls to the Natick Police with a note, "A little

18   glimpse of what all your hard work has led to."  The

19   same day Baugh sent Stockwell a link to a movie in which

20   a character arrived at a home unannounced and says, "I'm

21   here for the gang bang."  And later that day Baugh

22   messaged Stockwell, "We've burned two of our rental cars

23   by following them, now they are seeing ghosts thinking

24   everyone is following them and they call the police

25   every 10 minutes," referring to us.

1    Two days later Baugh told Stockwell, "The cops

2    traced the gift card from the pizza delivery back to the

3    Safeway in Santa Clara.  Defendant Stockwell knew the

4    emotional distress we were experiencing and that there

5    was a criminal investigation by the Natick Police.

6    At 25 years old she was inexperienced, she was

7    also the manager of eBay's global intelligence center

8    making $120,000 a year.  She fired an intelligence

9    analyst in her department for refusing to participate in

10   the scheme to terrorize us.  Defendant Stockwell, when

11   caught, obstructed the investigation, had sexual

12   relations with her former boss, and accepted a $5,000

13   cash bribe from him in exchange for lying to federal

14   prosecutors.  I was stunned that the prosecutor's office

15   deemed fit to recommend 0 prison time for a defendant

16   who committed cruel crimes, obstructed the

17   investigation, and then lied directly to federal

18   prosecutors.  What message does that send about the

19   consequences of her actions?

20   I wish I was --

21   THE COURT:  What do you recommend?

22   MS. STEINER:  Pardon me?

23   THE COURT:  What do you recommend?

24   MS. STEINER:  Your Honor, this is the 4th

25   sentencing hearing that I've attended and had to give a

1  victim impact statement to, it's the first where a
2  defendant was not recommended prison time.  Excuse me.
3       David and I had had many conversations and we
4  never can calculate what the right sentence should be.
5  0 prison time for somebody who did this, I just don't
6  know what message that sends to people.  Cyberstalking
7  is just a growing problem and they need to know that.
8  And I don't know because I don't have -- I didn't even
9  -- I wasn't even allowed to see the sentencing
10 recommendation memoranda.
11      Defendant Stockwell's sentencing memorandum was
12 filed this morning, so I don't know who this person is.
13 You have much more insight.  So I think that might
14 answer your question, your Honor.
15      THE COURT:  It does indeed.
16      MS. STEINER:  Okay, thank you.
17      THE COURT:  And I have read everything and I
18 appreciate what you say and I say in all candor, in
19 every sentence that this Court imposes I do not know
20 with precision the appropriate sentence.  It's a
21 difficult responsibility.  You made the point that you
22 don't think it should be a no-jail time sentence and it
23 was only for that reason that I interrupted.  That's a
24 very candid and helpful response.
25      It is my responsibility.  I can tell you I take it

1    very seriously.  Please go ahead.

2         MS. STEINER:  I thank you, your Honor, and I would

3    not want to be in your chair this morning.

4         I wish I was a detached observer, someone reading

5    an article in the newspaper instead of a victim standing

6    before you today deeply traumatized by what the

7    defendant did to my husband and me.

8         Thank you so much, your Honor.

9         THE COURT:  Thank you.

10        THE COURT:  Mr. Kosto, I'll hear you.  I have read

11   everything that's before me.  For reasons that are fully

12   satisfactory to the government you have, as has the

13   defendant, filed your sentencing memoranda under seal.

14   I'll respect that in anything I say.  So let's have that

15   in mind when you argue.

16        Do you understand?

17        MR. KOSTO:  I do, your Honor.  We placed a

18   redacted version of the government's sentencing

19   memorandum on the dockets that explains the rationale

20   for the sentence in large part, but it should be

21   available to the public.

22        THE COURT:  And since you've done that, it will be

23   in that form.  I'll hear you.

24        MR. KOSTO:  Thank you.

25        And I guess the first question, your Honor, is

1   that the government did file the motion in connection

2   with that submission.  May we assume that it's allowed

3   and then speaking --

4        THE COURT:  The motion is allowed.

5        MR. KOSTO:  Thank you.

6        So, your Honor, the government is asking the Court

7   to impose a sentence of 2 years probation with the first

8   year to be served in home confinement in the Northern

9   District of California and the required $200 special

10  assessment.

11       THE COURT:  A fine?

12       MR. KOSTO:  I'm sorry?

13       THE COURT:  A fine?

14       MR. KOSTO:  The government is not seeking a fine

15  in light of the financial condition described in the

16  presentence investigation report --

17       THE COURT:  Thank you.

18       MR. KOSTO:  -- which appears to show that the

19  defendant does not have an ability to pay a fine.

20       THE COURT:  Thank you.

21       MR. KOSTO:  This is a crime, your Honor, that

22  started behind a keyboard from 3,000 miles away.  It

23  wasn't violent in the sense of many cases that come

24  before the Court for sentencing, but it had the same

25  kind of effect on the victims who you've just heard

1    from, and I think it's plainly apparent that it gave

2    them real-world symptoms, nausea, sweating, fear of the

3    loss of a loved one.

4         There were moments in this case that had been

5    described to the government that include, um, the

6    victims putting a pile of dish ware and things that make

7    noise up against the back door of their home while this

8    was all going on so that if someone attempted to break

9    in they would know about it and be able to take steps.

10   The consequences of these actions do linger to this day,

11   I'm sure you've heard it in the victims's voices as they

12   address the Court.

13        What was needed in this case, your Honor, was a

14   speck of decency when this all started, the recognition

15   that people want to be treated or should be treated in

16   the way that they want to be treated themselves,

17   notwithstanding the fact that a lot of this took place

18   online.  That's an illustration of the power that

19   technology has in our lives.  And at every level of

20   culpability in this case, each of the defendants,

21   including Ms. Stockwell, failed the victims and broke

22   the law.

23        What we're trying to do in these sentences and

24   these recommendations, your Honor, is assess the level

25   of culpability of each of the defendants and provide or

 1   recommend a sentence that has sanctions but still

 2   acknowledges where they fall within the gamut of

 3   responsibility.

 4        THE COURT:  I respect that.  I have -- and you're

 5   framing it, as of course you must, with respect to the

 6   cyberstalking statute.  I have to say that I was struck

 7   in reading all these materials that here we have

 8   indisputably corporate agents, however illegal and

 9   misguided, trying to suppress speech, that is the goal.

10   I mean correct me if you think -- yes, I think this case

11   has implications that go well beyond the harm to these

12   victims and the wisdom of the Congress in enacting a

13   statute which is consonant with today's reality.

14        But I am struck that here they -- and I'm not

15   making any choices about who was indicted or any

16   reflections, it's not before me and I do not speak to

17   it, I speak only to the people -- to the person -- to

18   the persons that are before me, and of course I have

19   knowledge of the others indicted.  But the whole idea

20   here was to suppress a precious right.

21        Are you going to address that?

22        MR. KOSTO:  We did in our memorandum, your Honor.

23   The idea that the Steiners were targeted for the content

24   of eCommerce speech is something that adds to the

25   seriousness of the offense.

1          THE COURT:  I would say so.

2          MR. KOSTO:  The mechanism that was chosen, I think

3     we've said, is abhorrent to First Amendment values, the

4     content of the messages.  "No more posts about eBay,"

5     fill in vulgarity at the appropriate moment.  One can't

6     reach the conclusion, whatever the defendants were

7     saying at the time, about "Oh, there's a security risk

8     here," that they were out to change the content of what

9     the Steiners were writing about eBay.  That enhances the

10    seriousness of the offense.

11         But the Court does need to, I think appropriately,

12    try to -- and I should say that absent the motion we

13    filed and absent some of the factors that Ms. Shifman

14    has highlighted in her memorandum, this would

15    indisputably be a prison case.  And we have so

16    recommended in each of the four sentencings that have --

17    excuse me, in each of the three sentencings that have

18    taken place and will recommend it in some of the

19    sentencings that follow, that a custodial sentence would

20    be appropriate.

21         Judge Saris responded to a request of home

22    confinement in the Harville case a few weeks back with a

23    defendant who was significantly more culpable than

24    Ms. Stockwell by characterizing that request as "widely

25    inappropriate."  But what we're trying to do with the

1    benefit of the motion we filed for Ms. Stockwell is to

2    thread a needle that addresses the range of conduct and

3    that starts with Mr. Baugh, who received a 57-month

4    sentence from Judge Saris.  I don't think there's any

5    dispute across -- from the victims, from the government,

6    from Ms. Shifman, from the other defense lawyers in the

7    case, that Mr. Baugh was disproportionately culpable, he

8    was the motivating force and originator of the conduct.

9    And although the government isn't familiar with the

10   specific anecdotes that Ms. Shifman describes in her

11   memo about how Mr. Baugh ran the Securities Department,

12   it's consistent with the government's understanding of

13   how Mr. Baugh ran the Securities Department at eBay.  So

14   he's in a spot that the Court can look at for relative

15   culpability.

16        There's a group of defendants that the government

17   would, um -- a list to include Ms. Popp, who the Court

18   will sentence later today, Mr. Harville, the former

19   military police officer, and Mr. Gilbert and Mr. Cook,

20   two former police captains with decades of experience in

21   law enforcement who form the middle range of

22   culpability, and they've received sentences of between

23   18 and 24 months, with Mr. Gilbert pending sentencing

24   and a guideline sentencing range anticipated to be 30 to

25   37 months.

 1          And then in the next group, your Honor, we have
 2     Ms. Stockwell and Ms. Zea, who this Court will sentence
 3     in November as well, the newest of the employees at
 4     eBay, ones who, in the government's assessment of the
 5     conduct were dispatched to do things and told to do
 6     things and does them.  It doesn't eliminate their
 7     culpability, it mitigates it.  So if Ms. Stockwell is
 8     told, "Go to BestBuy, buy a computer, pay cash," and
 9     that computer is then used to send the harassing
10     messages, "Send me a license plate for the victim's
11     car," "Make me a document that label the Steiners as a
12     security threats," "Send these deliveries," "Stop these
13     deliveries," "Start them again," you get a sense for
14     where this defendant falls within the range of the
15     defendants involved in the conspiracy.
16          Ms. Stockwell knew what this was for, I think the
17     Steiners alluded to the audio recordings and the videos
18     that Mr. Baugh was peppering his co-defendants and
19     co-conspirators with, it was understood what the
20     harassment was for.  And then even beneath Ms. Stockwell
21     and Ms. Zea, you have two other individuals that the
22     government has alluded to named "Analyst 1" and "Analyst
23     2" who quit and got fired rather than participate,
24     rather than do what they were told.
25          With the benefit of the motion we've filed, your

1    Honor, where we come down with -- where we come down on

2    Ms. Stockwell is that a noncustodial sentence is not

3    appropriate, but that a straight probationary sentence

4    similarly or relatedly minimizes the outside impact that

5    her conduct and the conduct of her co-conspirators had,

6    however she was motivated.  I mean some crimes are

7    serious enough to merit some lesser deprivation of

8    liberty.

9         It's a legitimate question, in the absence of the

10   motion the government's filed, why the government would

11   not be seeking a custodial sentence.  We differ slightly

12   with Ms. Shifman in that we think some sanction, some

13   deprivation of liberty in the form of home confinement

14   that recognizes Ms. Stockwell's unique -- relatively

15   unique role in the crime and her physical and mental

16   health and that, um, those factors role in the crime,

17   um, that would be a sentence that would allow her to

18   work, that would allow her to address those mental and

19   physical needs, that would allow her to continue to

20   engage in community service, but would not be the least

21   of the sanctions that the Court could impose.  Because

22   at bottom, your Honor, this is not a case in which any

23   defendant should be receiving the least of the sanctions

24   the Court could impose whatever well-earned benefits the

25   defendant did receive as a result of her actions

1   following, um, her involvement coming to light.

2        THE COURT:  Thank you.

3        MR. KOSTO:  So those are the reasons, your Honor.

4        THE COURT:  Thank you.

5        Ms. Shifman.

6        MS. SHIFMAN:  Thank you, your Honor.

7        THE COURT:  And again your memorandum is under

8   seal and I respect that.  But I thank you for it.

9        MS. SHIFMAN:  Your Honor, I believe there's also a

10  redacted memo on the public record.

11       So thank you for this opportunity.  On behalf of

12  Ms. Stockwell, I want to first begin by saying that what

13  happened in that unit, that security unit at eBay and at

14  eBay generally was despicable.  There is on behalf of

15  Ms. Stockwell, her individually, a heartfelt

16  understanding and complete distress at the harm that was

17  caused to Mr. and Mrs. Steiner individually,

18  collectively, and that they have to experience still

19  today.

20       THE COURT:  Well when did she come to that

21  realization?

22       MS. SHIFMAN:  Your Honor, what makes, um,

23  Stephanie -- if I may call her "Stephanie"?  What makes

24  her unique in the context of this crime is that -- and

25  I'm going to lay out who she is individually, her

1    characteristics, is that she suffers from a neurological

2    disability, autism spectrum disorder.  She is autistic.

3    At the time that she worked at eBay, um, when she was

4    25, she had not yet been diagnosed with that disability.

5    She also suffers from mental health disorders, ADHD, an

6    anxiety disorder, and a depressive disorder.

7         She knew that something was wrong with her, she

8    masked it, she mimicked others, she followed directions,

9    she acted while at eBay in accordance with the

10   characteristics of someone who suffers from autism.  She

11   at that time did not have the mental wherewithal, if you

12   will, to be able to resist the grooming and predatory

13   actions of Jim Baugh and Stephanie Popp.

14        Jim Baugh --

15        THE COURT:  Wait.  Wait a minute.  If that were

16   all so, then under the guidelines there are bases for

17   reducing the sentence.  I recognize what's been said

18   here.  But on the one hand you say the conduct is

19   despicable, but I'm starting with the -- I'm starting

20   with the proposition that she had the mental wherewithal

21   to form the necessary intent to commit the crimes of

22   conspiracy.  Are you saying she didn't have it?

23        MS. SHIFMAN:  No, I'm not, your Honor, I don't

24   believe that it rises fully to the level of a defense.

25   If I believed that we would not have come forward to

1    plead guilty, she would not have come forward to reveal

2    her participation in the offense.  And I do believe

3    that, um, under the sentencing statute, 3553, that these

4    are factors that are highly-mitigating, they offer

5    unique characteristics.

6        And since the commission of this offense -- and I

7    will say, your Honor, that when I first met

8    Ms. Stockwell and had the opportunity to interview her

9    and watch her answer questions, I realized in short

10   order that something was amiss.  That is how the path to

11   obtaining her full diagnosis began.  And since she has

12   been diagnosed, she has, on her own, without Court

13   order, undertaken an extensive exploration of what this

14   disability means for her individually and the best path

15   to ensure that she never finds herself incapable, in an

16   environment like eBay, not to walk away and do the right

17   thing.

18       And at the time Ms. Stockwell was operating as

19   someone with autism might, which is to look around, see

20   what others were doing, try to just mimic what they were

21   doing and follow orders.  I'm not saying it was right,

22   it was criminal, she understands that she should have

23   made other choices and she deeply regrets that she

24   wasn't doing that at that time.

25       And in short order, um, she began the process and

1   -- which continues to today, and you've seen that in the

2   letter of Dr. Martin, which is our first, Exhibit B, and

3   also in the psychological report of Dr. Walsh, which is

4   our sealed Exhibit A, that she has undertaken every

5   necessary step to ensure that she remains a good citizen

6   and a significant contributor to the community.

7         And I think it is clear when you read not only the

8   psychological reports and the letter -- and the letters

9   from her family, but also when you read the two letters

10  of her direct employers, she was lucky enough within the

11  last year to finally find employment, and the CEO of her

12  company and her direct supervisor write about

13  Stephanie's "moral compass," how she has from the

14  inception, during the first interview, revealed what she

15  did in this case to ensure that she was being honest and

16  making full disclosures and ensuring that she brought no

17  harm to her employer, those people she worked with, or

18  any of the customers or clients of the company

19  themselves.

20        She is today a completely different person than

21  she was in 2019.  In the last three years she has

22  undergone a post-offense rehabilitation the type or the

23  sort that the Court would hope for at the conclusion of

24  a sentence, but she has done that on her own prior to

25  sentencing.

1        It is appropriate here, we believe, and that's why

2    she pled guilty, that this criminal offense follows her

3    around, it is a lifelong, um, stigma, it will infect her

4    for the rest of her life, but it also enabled her to

5    make the kinds of changes that we want for people living

6    in the community.  I know, from representing

7    Ms. Stockwell for the last three-plus years, that her

8    heart felt remorse for her actions that contributed to

9    this offense and its impact on the Steiners.

10        Jim Baugh ran a predatory department and he was a

11    predator directly to Stephanie.  He not only subjected

12    her to psychological terror in the running of the

13    department itself claiming that they were doing armed

14    and active shooter drills on a regular basis, subjecting

15    them to psychological breakdown and rebuilding, telling

16    them they were worthless if they couldn't keep up, but

17    he also lured her into a -- I'm just going to say what

18    it was, unconsentual sex on a number of occasions,

19    including doxing her drink in order to have sex with her

20    and calling himself her "Dad" as well.  For someone with

21    her disability and mental health disorders, at the time

22    it was just too much.

23        Would that happen to Stephanie today, would she

24    participate?  No, she would not.  She is in a completely

25    different understanding of how she needs to reach for

1    help, both doing active work herself and reaching to

2    those she knows support her so that she doesn't find

3    herself in this position again.

4         We believe that under 3553, in addition to the

5    offense, in addition -- and we appreciate everything

6    that Mr. and Mrs. Steiner said today, and we understand

7    it.  We do.  But we believe, given her unique

8    characteristics, the collateral consequences, the post-

9    offense rehabilitation, her need to continue her journey

10   to ensure her stability, both with her disability and

11   her mental health disorders, her need to and her desire

12   to contribute to the community as an alternative

13   sanction for community service work, that the lack of

14   need for specific deterrence -- I don't think anyone

15   thinks that Stephanie will find herself in a criminal

16   law position ever again, but also as a general

17   deterrence for someone like Stephanie who is

18   intelligent.  Her autism --

19        THE COURT:  Well I would think that this is a case

20   that cries out for general deterrence.

21        MS. SHIFMAN:  Yes, your Honor, and there is that

22   deterrence.  By the fact that despite her disability and

23   despite her mental health disorder and despite her

24   significantly more, compared to the other conspirators

25   role, and her minor role in the offense, that she will

1    carry the burden of two felony convictions for the rest
2    of her life.

3           It has impacted her employment opportunities and
4    she's a young woman who needs to work, she needs to be
5    able to financially support herself, and she carries
6    that, and that is a large general deterrent to those who
7    might encounter the rogue predatory actions of a
8    corporate agent and its direct supervisors.  And we
9    think the combination of that, um, and all the other
10   factors we've raised in our sentencing memo, mitigate
11   substantially here for a probationary sentence.

12          And that if the Court is contemplating any home
13   confinement, that it be a lesser amount of time than
14   what the government recommends.  We believe that a year
15   of home confinement would be detrimental to her mental
16   health and to her abilities to properly care for --

17          THE COURT:  How so?  That seems a rather sensitive
18   recommendation to me.  If she's able to work, attend
19   medical appointments, attend religious, um, expressions,
20   um, and take care of the necessities of life, one would
21   think that that was a very sensitive sentence.

22          MS. SHIFMAN:  And we appreciate the recommendation
23   of the government, your Honor.

24          One important part of her treatment plan includes,
25   um, strenuous physical activity in the outdoors, in the

1    open space, for her well-being, and I believe that a

2    home confinement sentence, if it's imposed, your Honor,

3    we would ask that that be allowed as a part of her

4    treatment plan, with the prior approval of the probation

5    department, because if that is not included, we believe

6    that would be detrimental to her physical and mental

7    well-being.

8            THE COURT:  I understand, that's a little

9    different.

10           Thank you very much.

11           MS. SHIFMAN:  Thank you, your Honor.

12           THE COURT:  Ms. Stockwell, you have the right to

13   talk to me directly.  You're not required to.  If you

14   want to, I'll hear you now.

15           THE DEFENDANT:  Thank you, your Honor.  Thank you.

16           (Stands at podium.)

17           THE DEFENDANT:  Thank you, your Honor.  If I need

18   to speak up, please let me know.

19           THE COURT:  I can hear you.

20           THE DEFENDANT:  Okay.

21           Your Honor, my involvement in these events and my

22   conduct during the investigation are, without a doubt,

23   the lowest points in my life.  I am overwhelmed with

24   shame and guilt at my actions (cries.) for the impact

25   that this has had on my family and my loved ones, and

1   for most of all, um, how my part in these events, in the

2   actions of the people that I worked with, affected

3   Mr. and Mrs. Steiner.  The actions that I took part

4   in -- (cries.) I'm sorry, they ranged from immature to

5   cruel, and at the time I didn't consider the weight of

6   those actions and the undeniable impact that they've

7   had, um, and for this I'm so so sorry.

8        When I found out the full extent of what

9   Mr. Baugh, Ms. Popp, and others had planned and done, I

10  was appalled.  I realized that this is not just pranks

11  to distract from the publishing of a blog, um, as had

12  been originally described to me, um, and in which I

13  originally believed about it, it was in fact stalking

14  and harassment, and, um, through my actions and

15  involvement I helped make that happen.

16       When I read the initial draft of the Steiners's

17  victim impact letters, um, describing everything that

18  they endured and their terrible experience in that time

19  in August, I got physically nauseous and sick to my

20  stomach reading some of the messages that they had been

21  sent, um, and just thinking about what those actions had

22  put them through and the impact that this has had on

23  their lives.  I don't think that my words will be enough

24  and I'm not sure that my apology to them will be either.

25  But may I address them?

1       THE COURT:  You may speak in the courtroom, of

2   course.

3            (Turns around.)

4       THE DEFENDANT:  I'm so so sorry for the impact

5   that this has had on you, for my actions, and my

6   thoughts go out to you for what happened on this.  No

7   one deserves to go through what both of you have.  And I

8   know it can't be easy for you to have to relive this

9   over and over again.  And I hope that you're able to get

10  through this with some closure and get the peace that

11  you need.

12           (Turns back.)

13      THE DEFENDANT:  This offense, the charges, and

14  everything that has happened has truly shaken me to my

15  core in the past three years, there hasn't been a day

16  that this hasn't weighed on my mind and my conscience,

17  um, it has impacted every aspect of my life and is going

18  to shape much of my future as well.  I have struggled

19  greatly with my actions and my involvement is this case,

20  I have had to come to terms with the fear and suffering

21  I've caused people I've never met, um, who did nothing

22  wrong, and that guilt is something that I will always

23  have.  I have also struggled and worked to understand

24  how I came to be involved in cyberstalking, harassment,

25  and obstructing justice, um, as my actions and conduct

1   in 2019 are so far from the person that I want to be.

2   Therapy has been immensely helpful in processing this

3   and making meaningful changes.

4       Another huge key in coming to terms with this came

5   with my diagnosis of autism in early 2020.  While it

6   didn't come entirely out of the blue, I hadn't really

7   thought about the potential that I might be autistic too

8   much, I didn't understand what it meant and how it could

9   impact me, and I want to share this here as not an

10  excuse, because there's no excuse for any actions, but

11  to hopefully provide some context, um, because better

12  understanding my autism and the limitations that come

13  with it have made me better equipped to make the

14  significant life changes that will help to make sure

15  that I'm never in this situation again.

16      I've learned that autism for me it makes my social

17  cognition, my ability -- excuse me, um, (Cries.) to read

18  between the lines, um, to understand the motivations of

19  others, and to understand unsaid information or cues

20  very difficult.  Prior to knowing that I'm autistic and

21  understanding what limitations I have, as a result I

22  generally accepted what people told me at face value.

23  It didn't occur to me that someone might not be telling

24  the truth or might have an ulterior motive.  Knowledge

25  of this has helped explain a lot of the manipulation

I've endured in my past and it's also been critical in understanding of how I was manipulated by my supervisors during my time at eBay.  And again this is not an excuse, um, but it was a critical realization for me that has allowed me to make some really drastic changes in my life.

Realizing and acknowledging these limitations has been huge.  Now I'm aware that I must be cautious about making judgments, um, in who I trust, and I have people in my life now who can help me work through those issues when I'm not sure about a course of action.  I've built up a strong group of support people in my life who I know I can trust, um, and with whom I can regularly check in on decisions and interactions that I'm not sure about.  And that's been a big change.  In acknowledging that I need this support, I have been able to have more accountability in my life, I've been better able to consider the potential impacts and consequences of my decisions and actions, and I've also been able to feel more safe and secure in the aftermath of the mess I made of my life.

During the time that I worked at eBay, I was extremely isolated, I had no such support or awareness, um, of my autism and the impact that it had on my understanding of things.  At the time I had a distant

1   relationship with my family and all of my regular

2   interactions and friendships and support were in that

3   group list that I worked with at eBay.  I saw Mr. Baugh

4   as a mentor and a father figure and had only ever

5   assumed that he had my best interests at heart, and

6   knowing what I now know, um, and given everything that

7   had happened, that thought makes me really sick.  I have

8   spent a lot of time in therapy both devastated and

9   terrified that I could put so much trust in someone like

10  him.

11          Since then, with the help and guidance of my loved

12  ones and therapist, I have worked hard to create an

13  environment and develop tools where I'm better able to

14  recognize potentially dangerous situations and have the

15  courage and agency to step away.  I've also worked on

16  understanding and having boundaries and have gained a

17  better understanding of what should be expected of an

18  appropriate work environment, and I have done a great

19  deal of reflection on the type of person that I want to

20  be and the life that I want to live and the impact that

21  I want my life to have moving forward.

22          Despite having gone to school for years with hopes

23  of working in security and intelligence, I left that

24  industry and have no intention of ever returning.  I

25  wanted to work in security to help people and to make

1   people feel safe and I don't think I could have messed

2   that up more.  I've taken classes and training to gain

3   the necessary skills to work in other fields, um, and

4   have worked for the past year at a small company

5   supporting their business functions and conservation

6   clients.  I care a lot about the work that I do, but I

7   also realize that family, both the one that I have and

8   the one that I would like to build someday, and

9   community, are the most important parts of my life.

10  I've reevaluated my values and realize that all of my

11  choices, goals, and the people I associate with should

12  reflect those values, and these include honesty and

13  integrity, kindness, transparency, in actions as well as

14  in giving back to the community.  I've learned to ask,

15  "Could this hurt somebody?  Is this person telling me

16  the truth?" and I've learned that it's okay to walk away

17  and say "No."

18       While all the work that I've done, um, has changed

19  the way that I live my life now, I know that nothing can

20  undue my actions in 2019 or the lasting impact that this

21  has had on those people involved and impacted,

22  particularly Mr. and Mrs. Steiner, and I would like to

23  one more time offer them my sincerest apology and thank

24  them for this time today because I know that it's

25  difficult for them.  I would also like to thank my

1  family for their support and love, it's been crucial for

2  me, and I apologize to them as well.

3       Thank you very much for your time and

4  consideration, your Honor.

5       (Pause.)

6       THE COURT:  Ms. Stephanie Stockwell, pursuant to

7  provisions of 18 United States Code, Section 3553(a),

8  the information from the United States Attorney, your

9  attorney, the probation officer, and yourself, this

10  Court sentences you to 2 years of probation.  The first

11  year of probation will be spent in home confinement at a

12  residence approved by the probation office.

13       You will be permitted to leave home confinement

14  for the purposes of employment, attending any medical

15  appointments or counseling, any religious observances,

16  for the purpose of shopping for necessities such as food

17  and clothing.  I am sensitive to what your attorney has

18  argued and the business about strenuous physical

19  activity and should your treating physician recommend

20  such a regimen, it is open to the supervising probation

21  office to permit you to engage in such activity.  Other

22  than that you'll be in that residence.  This is home

23  confinement.  If you violate those terms, the Court will

24  have little choice but to send you to prison.

25       They'll be no fine due to your inability to pay a

1    fine.  They'll be the $200 special assessment as

2    required by the law.  This is the sentence on each count

3    of the conviction, the sentence on each count runs

4    concurrent, one with the other.  Let me explain this to

5    you.

6        The activities of this group are nothing short of

7    disgusting and appalling, words do not encompass it.

8    What the record that this Court has before it -- the

9    record that this Court has before it shows a deliberate

10   attempt to actually suppress speech, to interfere with

11   the constitutional rights of others.

12       Now the recommendation of the government here has

13   been extraordinarily sensitive.  The sentence is my

14   responsibility.  I adopted the government's

15   recommendation, but the sentence is my responsibility.

16   Make no mistake, were it not for the motion the

17   government filed, which I adopted, and were it not for

18   your undoubted condition which you forthrightly set

19   forward here and which the Court recognizes, you'd be

20   going to prison.

21       The Court imposes upon you all the general and

22   special conditions of probation as they are set forth on

23   Pages 36 through 39 of the presentence report with one

24   addition.  There shall be no disparagement of the plea.

25   This Court concludes that you knew very well what you

1  were admitting to at the time you pled guilty.  So while

2  your free speech is not infringed in any way, they'll be

3  no saying "Well I didn't really mean to do these things,

4  I felt I had no choice."  You've admitted to these

5  crimes.  There's no taking that back.  And to disparage

6  the plea is to violate the terms of your probation.

7      In all honesty I hope I can believe what you've

8  said here today about how you've changed and what your

9  able counsel has said on your behalf about how you've

10 changed.  I have taken that into account.  I have taken

11 the government's recommendation into account in

12 fashioning this sentence.

13     Ms. Steiner has it just right, I never know with

14 precision what is the best sentence, ever, but what I do

15 is try to fashion, in accordance with the law, what is

16 the best sentence.  It is my responsibility.  I consider

17 this a fair and a just sentence, I have no hesitancy in

18 imposing it.

19     You have the right to appeal from any findings or

20 rulings the Court has made against you.  Should you

21 appeal and should your appeal be successful in whole or

22 in part and the case remanded, you'll be resentenced

23 before another judge.  Ms. Shifman, if an appeal is

24 decided upon, you want transcript, seek it from this

25 session of the court because I'll turn it around right

1    away.

2         Do you understand?

3         MS. SHIFMAN:  Thank you, your Honor.  A couple of

4    questions.

5         Do we need to put on the record the specific

6    language that the Northern District of California needs

7    for the imposition of home detention?

8         PROBATION OFFICER:  Yes, your Honor, I sent

9    language to Ms. Gaudet.  They require location

10   monitoring to accept the case of home confinement.

11        THE COURT:  I will so order.

12        PROBATION OFFICER:  Thank you.

13        MS. SHIFMAN:  Thank you, your Honor.

14        THE COURT:  And I thank you, Ms. Shifman.

15        MS. SHIFMAN:  And one other matter, your Honor.

16   We will be seeking transfer of supervision to the

17   Northern District of California where she resides.  I

18   just wanted to let the Court know --

19        THE COURT:  I'm not surprised.  I've read the

20   papers thoroughly and that's one that makes perfect

21   sense.

22        MS. SHIFMAN:  Thank you, your Honor.

23        THE COURT:  And without detracting from the

24   sentence, it is a criminal sentence, um, I certainly

25   hope that in terms of health and well-being

```
1    Ms. Stockwell fares well.

2         MS. SHIFMAN:  Thank you.  We appreciate that.

3         And may the special assessment be paid at the

4    Clerk's office today?

5         PROBATION OFFICER:  Yes.

6         MS. SHIFMAN:  Thank you.

7         THE COURT:  That's how we'll proceed.  All right.

8    Let me speak with the Clerk.

9         (Pause.)

10        THE COURT:  In this matter you may stand in

11   recess.  We're calling the next case.

12        (Pause.)

13        THE COURT:  Oh, I should say, the restrictions

14   presentence remain in effect until we get this

15   probationary sentence in effect.

16        MS. SHIFMAN:  Of course.  Thank you.

17        MR. KOSTO:  Thank you.

18        (Ends, 11:40 a.m.)

19

20

21

22

23

24

25
```

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the forgoing transcript of the record is a true and accurate transcription of my stenographic notes, before Judge William G. Young, on Tuesday, October 11, 2022, to the best of my skill and ability.

/s/ Richard H. Romanow 10-19-22
_____
RICHARD H. ROMANOW   Date